Ms. Williams was the plaintiff in the court below, where she filed claims against her former employer, Tarrant County College District, based on three separate statutes, 1, the Family and Medical Leave Act, 2, the Americans with Disabilities Act, and 3, the Texas state law equivalent to the Americans with Disabilities Act and the Texas Labor Code. But the district court erroneously granted summary judgment on all of the claims that she had asserted, including claims that had not even been addressed in the motion for summary judgment and supporting brief submitted by the former employer, Tarrant County College District. Also, the court misstated the status of the law under the Americans with Disabilities Act, which had been amended and the amendments went into effect in 2009. So more than seven, eight years later, the district court was still applying the preamendment statute. And as a result, by applying the wrong law and by misapplying the facts, the court reached the wrong decision, and we are asking this court to reverse all our claims and remand the claims to the district court. If, on review of the summary judgment record, it's determined that you failed to show pretext under the McDonnell Douglas test, that answers everything, doesn't it? Except with respect to the Family and Medical Leave Act, I believe it would. The Family and Medical Leave Act includes claims that would not require a showing of pretext. There was the failure to restore a claim, but it might also dispose of the retaliation claim. I plan to divide my time briefly, well, into three segments. First, and very briefly, I will talk about some of the facts of the case. Secondly, I'll talk about the ADA claims. And finally, I'll talk about the FMLA claims. Ms. Williams was a writing tutor at a college, and she had held this job for almost three years at the time she was fired. She had several disabilities, which are detailed in the summary judgment evidence, but nevertheless, she had overcome these disabilities and was good at her job. And there is ample evidence in the record that she was qualified and she received favorable comments from peers, from professors, and from students alike. She had an incident at work in November of 2012, and she took a period of FMLA leave. That is undisputed. She was cleared to return to work, but she was not allowed to return to work, so there was a violation of the restoration to her position under the Family and Medical Leave Act. Tarrant County College District claims that she was fired for, and the quote in her termination letter is, past performance. But all of their reasons are contested. And for that reason, Your Honor, we do not believe that this Court should be able to find a failure to show pretext. There is not a single reason given by Tarrant County College District for their actions that is not questionable or outright disproven in some way. For instance, most of those alleged poor performance examples predate a promotion that she had So if those events had been so significant to warrant termination, why then, after most of those events, was she terminated? In any employment case where a fact finder could conclude that the employer's reasons are false or that the employer is dissembling, the fact finder may also conclude that the employer is covering up, that it's pretext for illegal discrimination. And that is how we show pretext in this case, which I'll get to later. Let me just be clear, though, because of the question in your response. The District Court didn't reach pretext. Did not. Would you be comfortable for us to reach it? And then your argument is, here are the disputes of fact as to that? Or would we be remanding for that to be done in the first instance below? Either. I do believe that it would be appropriate for this Court to give the District Court an opportunity to address that, but I'm certainly prepared to discuss it with this panel today if that was the question. I do believe it's been adequately briefed by the parties and is before us today. The Americans with Disabilities Act, there are many different provisions and many different claims that can arise under the Americans with Disabilities Act. You have the actual disability claim, a regarded as disability claim, a retaliation claim, failure to accommodate claim. These are all separate and distinct types of claims. The only claim that was addressed in the defendant's motion and brief for summary judgment was the actual disabilities claim. It is well established that to be entitled to a summary judgment, the motion must state the grounds, and the grounds must be adequately and sufficiently articulated in the motion and brief. Grounds that are not addressed in the principal brief and motion are waived, and there is no need for a respondent to respond to arguments B through Z if the movement only relied on grounds A. They did not mention the regarded as claim in their motion. Now, Tarrant County College District is telling, told the court below and is telling this court, we talked about it in our reply brief. Arguments raised for the first time in a reply brief are waived. Were they in response to your brief? They were in response to our contention that they had not moved for summary judgment on the regarded as claim. So in their reply, they said, we did so because we asked for summary judgment on the entire case. Your Honors, if that is the way you can move for summary judgment, it's a game changer. It will certainly change the way I practice law. If all I have to do to get summary judgment is say I want it, and prayer for relief is in the entire case, I can do that. But what this court is going to get are respondents who are fearful of every single grounds that weren't addressed in the brief that I'd better now address or else the court is going to grant summary judgment on some grounds that I didn't address. We're going to get longer briefs, more complex litigation, and it will clog the system. That is not the brief that they submitted. They didn't address regarded as anywhere in their motion or supporting brief. And what also is surprising is that they fault the plaintiff here for failing to move for leave to file a surreply. We've cited authority from the district court that surreplies are heavily disfavored. So that alone is why we didn't. There was also an issue as to whether, assuming they had raised it, was there evidence to support the regarded as claim, that the supervisors knew and they believed that she had an impairment. The district court's own opinion cites some of that evidence. The plaintiff's own declaration says that she informed her two immediate supervisors, Herrera and Biber, of many of her conditions. And there was also an email while she was out on leave where she talks about having a blood disorder. So there is ample evidence to support finding of a fact issue on the regarded as claim. With respect to the retaliation claim, this is another one, and I'm talking about the retaliation under the ADA because there was a protected activity that she took leave, things like that. The college district's argument is you can't bring a retaliation claim under the ADA unless you check the retaliation box on the EEOC form. And that is not the law. There is no case that says that, and it's well established in this circuit that you look not only to what the charge says, but the investigation that would reasonably flow from the charge. In this case... Is there any case law specifically on failure to check the box? I believe there is, Your Honor. I don't have a case to support you here, but there I believe are several cases where they... In fact, I think the Leahy case that I cited in our principal brief is one such case, now that I think about it. The plaintiff had said, I requested accommodation, I was refused accommodation, and I was terminated. And the court there said that would lead... A reasonable investigation of those allegations would lead to whether that was retaliation. And we have an almost identical charge in this case as in the Leahy case. Now, the college district points out that our charge doesn't say that she requested accommodations. That's true. It says, I was denied accommodations by the head of HR, Dr. Ricardo Coronado, and seven days later I was fired by the head of HR, Dr. Ricardo Coronado. So we contend that any reasonable investigation of those allegations would include retaliation. Obviously, if the court disagrees and believes that you must check the box, then that would be a grounds to affirm on the retaliation claim. That's the issue for the court. The failure to accommodate claim, they did not move on, but there's an independent reason that because there has to be an actual disability to support a failure to accommodate claim, the district court's ruling on substantially limits, which I'm about to get to, also would have been grounds to dispose of that claim. So I won't bog down on that. Next I'd like to address the actual disabilities claim. This was the core of their motion for summary judgment. They asserted three grounds for summary judgment on the actual disability claim. They said there was no evidence that the impairments were substantially limiting, there was no evidence that she was qualified, and that there was no evidence her termination was because of the disabilities. Remember, this is a summary judgment. The quantum of proof is not great, and there was more than sufficient evidence on each of these grounds. With respect to the issue of substantially limits, in its brief the district has said it doesn't matter that the court got the law wrong because it based its decision on the evidence. Well, what evidence is relevant and material to a claim is obviously a function of what the applicable law is. So we disagree with that assertion. We think that by getting the legal definition of substantially limits completely wrong, the district court required additional facts that admittedly may not be in the — well, the court first ignored the rules of construction that said the analysis of substantially limits is not meant to be a demanding standard, it usually does not require medical evidence, and that some impairments by their very nature are substantially limiting and will in virtually all cases qualify as a disability. Well, the court was able to say there's no evidence of substantially limiting only by doing two things. One, the court ignored the medical records that were submitted, said they weren't properly authenticated. Well, in 2010, the rules of civil procedure, Rule 56, were changed to where that is not necessarily required in a response to a motion for summary judgment. The rules provided for a way that the movement could say they won't be able to put that into admissible form at trial, but the fact that it's not authenticated here before us at summary judgment is not in and of itself grounds to ignore those documents. So the court should have considered the medical records from the past, and the court should have considered it, but we contend that medical evidence is not always required in order to prove a substantially limiting impairment, and there are plenty of cases that support that position. The college district has asserted that medical evidence or some additional something, corroboration from a family member or something else, that there's a something else requirement, but there is no case that says that, there's no case that supports that. Even under the pre-amendment standard of the Americans with Disabilities Act, medical evidence was not always required to prove a claim. So there is plenty of evidence that she was substantially limited. With respect to qualified, I'll be very brief on that one because I already mentioned that there were student comments, emails, and she'd been doing this job for years. So she was able to do this job, she had been doing this job, and she had been cleared to return to work, but she was denied the opportunity because of the discriminatory acts of the defendant. We've touched on pretext, so I'll skip over that except for a couple of comments. At the prima facie stage, timing is sufficient, and her disabilities rose to the level of needing some accommodation, and she had to leave. Calling the employer's reasons into question shows pretext, and we've done that. We've presented evidence that the decision makers had a discriminatory animus. There's also a question of fact in this case as to who the decision maker was and what they based their decision on. They've given inconsistent answers between deposition testimony and interrogatory answers, and we've cited case law that shows that in and of itself presents a question of fact. Finally, under the Family and Medical Leave Act, we had a couple of different things. There was an email exchange between two of the supervisors saying, basically, we hope she resigns. We don't want her to come back to work after this incident. Another email was from Dr. Christine Hubbard. She knew that Plaintiff Christy Williams would be coming back on January 2, 2013, after the winter break, and she said, we'd better close the writing lab because she's volatile, was the term that Hubbard used. That reveals her actual thoughts and perceptions about Ms. Williams. Because she has these conditions, she's volatile and would be disruptive to the students in the writing lab. Did he just give his position very quickly on the FMLA? That'd be fine, sure. Good idea. Sure. On the FMLA, our contention is simply that they were very specific in their motion. They said, the claim, the limitations period is two years, and this claim was filed more than two years after. That, to me, is specific and excludes the possible application of the three-year limitations period. And I pointed that out in the response. I said, we have an issue here of whether the three-year limitations period applies. Willfulness. Correct. And the district court found willfully had been pled, but I should have known that because they said limitations, I should have included, I should have addressed the three-year period anyway, and that I didn't present evidence of willfulness. There is one case that held that that was not required, that when you present evidence you have a statutory violation of a right conferred by the FMLA, the violation itself can give rise to an inference of willfulness. This was not a case that's in the briefing. It's Wiggins v. Coastal Professional, Inc., and the Lexus site is 2014 U.S. District, Lexus 83843. I'm out of time. Yes, you've saved time for rebuttal. Thank you. May it please the Court, my name is Lou Pham, and I represent the Applee-Tarrant County College District. Supposing counsel mentioned an incident that led to her taking leave, I'd like to walk back briefly on the undisputed facts that led up to the termination. Towards the end of 2011 and through 2012, the appellant had conflicts with students, staff, co-workers, and her supervisor. The conflicts got so bad that she would not meet one-on-one with her supervisor without a higher-level supervisor also present in the room. Was that before or after the promotion? It was before and after. I would not call it a promotion, Judge Smith. She had a change in job title without any raise in pay, is my understanding, but her job duties stayed the same as well as her pay. But there was a change from instructional assistant to instructional associate. Other than the title change, I would dispute that there is any other change that would constitute a promotion. The conflicts resulted in several meetings, these group meetings, in October and November of 2012. They had another meeting that was scheduled for November 13, 2012, which was the incident that opposing counsel mentioned. During that meeting, they met to discuss the appellant's performance evaluation for that academic year. During that meeting, appellant became upset, agitated, and cried uncontrollably for several hours. That is undisputed in this case, to the point where her conduct during that meeting, because she cried uncontrollably for several hours, she effectively shut down the operation of the writing lab during this period. That's what led to her administrative leave. With regard, I'd like to spend my time next mostly on the disability discrimination claim and the issue of whether or not the appellant is disabled under the Act. And I believe, Your Honor, that this case turns on appellant's decision not to submit admissible evidence to overcome summary judgment. The district court disregarded three significant items. First of all, the short-term disability form, the FMLA leave form, as well as the blood test documents as hearsay and lack of authenticity based on our objections. What about the change in Rule 56 that occurred in December of 2010? Your Honor, I do not know — I'm not aware of any case that specifically cites that rule for the proposition that opposing counsel is urging. However, there is a long line of cases after 2010 interpreting Rule 56 that says, in this circuit, that says a court may consider only admissible evidence in ruling on a motion for summary judgment and that a nonmovement must provide evidence that meets the admissibility standards at trial. And because of that, Your Honor, we do not believe that the court committed — the district court committed error in not — in disregarding that. More importantly, Your Honor, appellant concedes in her briefing that those three documents were not offered to prove the truth of the matter asserted. And for — because of that concession on the record or on the district court's opinion, he did — the district court did not consider it based on appellant's concession that they were not introduced for the purpose of proving the truth of the matter asserted, did not consider it for that purpose. But appellant, instead, instead of introducing a business records affidavit or affidavit of a physician or someone else to prove that she had a disability, she instead chose to rely on her own unsubstantiated declaration. It is significant in this case that the declaration that she submitted, which is approximately 18 or 19 pages long, contradicts her own sworn testimony. Her alleged impairment when she was deposed, she said that the only two major life functions that she was impaired due to her alleged disability — due to her alleged impairment were dating and socializing. And based on that, we — we extensively briefed that dating and socializing are not protected major life activities under the Americans with Disabilities Act. What she — what appellant did was come back with her — contradicted her own deposition testimony with an unsubstantiated evidence about 18 or 19 pages long going into what other major life activities that she was supposedly limited due to her alleged impairment. And we — and the court ruled, the district court ruled that those unsubstantiated, uncorroborated as well as conclusory statements in her declaration cannot overcome summary judgment. In other words, the — the district court ruled that a — that a non-movement — not a non-movement cannot — cannot contradict her own testimony in order to create a material fact issue in order to overcome summary judgment. I'd like to address the next issue, the regarded as claim. The district court based its ruling on a lack of evidence showing perception of any impairment by the decision makers. While we — while we concede that the district court did not accurately set forth the standard under the Americans with Disabilities Act amendment, that is not what the court based its decision upon. The court ruled that there — there was no evidence that Dean Hubbard, who initiated the termination, had any knowledge of Ms. Williams' impairment regarding or regarded her as being impaired. In fact, on page 6 of Appellant's brief, where it talks about failure to accommodate, Appellant states this, Dr. Hubbard's assessment regarding possible termination did not take into account any of Williams' impairment because she deemed it irrelevant because she had — it was irrelevant to her because she had not received any information regarding any kind of condition for which the required — for which the employee required accommodation. Based on that, the district court ruled that the appellant presented no evidence of any — of a decision-maker who regarded her as impaired. In fact, with regard to the three documents I mentioned earlier in my argument, the FMLA form — the FMLA-LEA form, the disability form, and the blood test, the district court ruled that if we use those three documents to show notice, there was no evidence showing who received those documents. And because there is no evidence of who received regarded as impaired. Now, opposing counsel did mention that there was an email from Ms. Williams to her supervisor saying that she had a chemical imbalance. This court has ruled in Ariza v. Loomis-Armored, a Fifth Circuit case in 2017, that mere knowledge of an employee's medical condition does not in itself support an inference that the is precisely the case here. All she — all Ms. Williams told her supervisor that I have a chemical imbalance. That does not create an inference that the actions — disciplinary action against her were due to her — the employer or the decision-maker regarding her as impaired. I'd like to address next our FMLA summary judgment. The district court ruled that the two-year statute of limitations applied because there was no evidence presented of willfulness. The — we moved for summary judgment on summary — because of the two-year statute of limitation. Appellant, in their response, said it should be the three-year limitation because we pled willfulness. The issue of willfulness was in play, but the willfulness. And because there were no evidence of willfulness, the district court ruled that the two-year statute of limitations applied, not the three-year statute of limitations. In this circuit, the — I believe it's the Apache Corporation case — this circuit has ruled that when a party moves for summary judgment, affirmatively seeking dismissal of the entire complaint, the nonmovement is deemed to have notice and an opportunity to do whatever scope of relief sought. And I believe in the Atkins v. Salazar case, this circuit ruled that the district court may grant summary judgment sua sponte so long as the nonmovement was aware that the issue is at play. We would contend in this case the FM — the two — the statute of limitations is squarely at play in this — in our — in our defense of that. Lastly, I would like to address the retaliation claim. The retaliation claim is a distinct legal claim, and the employee must exhaust her administrative remedies. It is significant to note in this case that the appellant — the alleged retaliation happened before Appellant filed her EEOC charge. That is, after she was terminated, a few months thereafter, she then filed her EEOC charge. In the charge itself, which is in the record, the appellant did not check the box asserting a claim of retaliation. She checked two boxes, the one asserting a claim of age discrimination and disability discrimination. If — if the court would look to the narrative part of the charge, there is no reference to retaliation or anything in there mentioning retaliation. And in this circuit, under the Miller v. Southwestern Bell case, failure to check the correct box in the complaint form or otherwise disclose retaliation claim procedurally precludes the — the — the employee from bringing a retaliation charge. The employee from bringing a retaliation claim. With that, Your Honor, that sums up my — my presentation to the court. If there are no further questions, I will defer the rest of my time back to the court. Thank you, Mr. Pham. You all can save time for rebuttal. Your Honor, I'll start with the pure rebuttal points, starting with the first point made by Mr. Pham. He said that this was merely a position change, not a promotion, and that there was no raise. The record proves that is wrong. Ms. Williams, in her declaration, describes the promotion, describes the raise. She attaches the pay records that show what she had been making and what she made after she was given the promotion to become an instructional associate. Also attached to her declaration, there are emails from the people at the district who had made the decision, and they describe it as a promotion. They say the promotion went to Christy Williams. With respect to the issue of whether some of these conflicts and complaints were before or after she got her promotion, they were almost all before. I can think of one offhand that was after. This was an incident in September on either the 11th or 12th of 2012, involving a student named Jessica Bermudez. Ms. Biber, who was the next-up supervisor over Ms. Williams, investigated what had happened in the writing lab the day Jessica Bermudez had come in, and she wrote an email, which is part of the record attached to Ms. Williams' affidavit declaration, stating, ìWe are all in agreement that Ms. Williams acted appropriately.î Hereís an example of how you prove pretext. When the employer gives a reason that just canít be true, a jury can conclude itís false, theyíre dissembling, theyíre covering up for pretext. Thatís what that was. They repeat this even in their appellate brief, that the Bermudez incident, whatever it was, is a basis for firing her. Yet their own investigation led to the conclusion in an email that she had handled it appropriately. Doing your job appropriately is simply not a valid reason for termination, and where the employer claims it is, thatís pretext. I want to talk about the Apache case, which they claim holds that if I ask for summary judgment on the entire case, well, youíre on notice. And if you donít address every possible way that you might defeat summary judgment, well, thatís on you. The Apache case does not say that. In the Apache case, a plaintiff brought three separate causes of action based on a contract. The defendant filed a motion for summary judgment as to the entire case, as to all three claims, stating that the outcome on all of those three contractual claims depended upon the meaning of a term, the term ìplatform costsî in an oil and gas-related agreement. The district court agreed that the plaintiffís interpretation of that term meant that all of their claims failed. Now, the district courtís opinion, or the Fifth Circuit Court opinion, also includes dicta that states if that plaintiff had believed that the motion inadequately sought summary judgment on all of his claims, he had an opportunity to raise that in the district court, but he didnít do so. Well, we did. We made that exact argument. We said, ìJudge, they havenít moved for summary judgment on several of these claims. We think it would be error for you to enter judgment on claims that they havenít moved on.î The Apache case does not support their position on this. Quickly, just he said that her declaration was discredited because it was contradictory. Disagree completely. This is the sham affidavit doctrine that if you directly contradict your deposition testimony without explanation, then that can be disregarded. Many of the discovery responses and the prior information that had been conveyed about the case listed depression, itís substantially a major life activity that is affected by depression, is proper brain function, several other major life activities. In their motion, they attach two, maybe three pages of deposition testimony where she was asked, ìWhat are the major life activities youíre talking about?î And thatís all she was able to come up with at the time. To take that and to say sheís now limited by that and that alone, there is no case on the sham affidavit doctrine that Iím aware of that imposes that kind of harsh result on a party. It doesnít contradict. She talks about other life activities in addition to the ones she mentioned in her deposition.